NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL A. REDD, Jr., )<br>        Petitioner, )<br>    v. )<br>ROBERT HOREL, Warden, )<br>        Respondent. ) | No. C 06-1691 JF (PR)<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY |

Petitioner, proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent has filed an answer and supplemental answer[1] addressing the merits of the petition, and Petitioner has filed a traverse.[2] Having reviewed the papers and the underlying record, the Court concludes that Petitioner is not entitled to federal habeas corpus relief and will deny the petition.

---

[1] Respondent's October 19, 2010 Motion to Amend to include as an exhibit the transcript from Petitioner's 2004 parole suitability hearing is GRANTED.

[2] Petitioner's August 2, 2010 "Ex Parte Application" requesting an extension of time to file his traverse is GRANTED. Petitioner's traverse is deemed timely filed.

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\SJ.JF\HC.06\Redd1691denhc.wpd

**FACTUAL AND PROCEDURAL BACKGROUND**

On April 12, 1976, Petitioner was sentenced to a prison term of seven years to life after being convicted of first-degree murder with personal use of a firearm.  On March 23, 2004 and September 28, 2005, the Board of Parole Hearings ("the Board") conducted subsequent parole suitability hearings and denied parole.

**DISCUSSION**

**A.     Standard of Review**

Because the instant petition was filed after April 24, 1996, it is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), which imposes significant restrictions on the scope of federal habeas corpus proceedings.  Under AEDPA, a federal court cannot grant habeas relief with respect to a state court proceeding unless the state court's ruling was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000).  "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id.  "[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.

A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\SJ.JF\HC.06\Redd1691denhc.wpd

2

unreasonable." Id. at 409.  The "objectively unreasonable" standard does not equate to "clear error" because "[t]hese two standards . . . are not the same.  The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."  Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

A federal habeas court may grant the writ if it concludes that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2).  The court must presume correct any determination of a factual issue made by a state court unless petitioner rebuts the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

**B.    Analysis of Legal Claims**

This Court summarized Petitioner's cognizable claims as follows: (1) the Board violated Petitioner's right to equal protection by affording other similarly-situated prisoners a parole release date while denying a release date to Petitioner; (2) the Board violated Petitioner's right to due process by relying upon insufficient evidence to deny parole following the 2004 and 2005 parole suitability hearings; (3) the power of the Board violates the constitutional doctrine of separation of powers; (4) the Board's failure to correct Petitioner's consecutive determinate sentence violated Petitioner's rights under the Eighth Amendment and to due process; (5) the Board retaliated against Petitioner for exercising his right to petition and was biased;[3] (6) the Board's requirement that Petitioner participate in Alcoholics Anonymous and Narcotics Anonymous violated Petitioner's First Amendment rights; (7) and the Board denied Petitioner due process by failing to order a new psychological evaluation for the 2005 hearing.

**1.    Equal Protection**

Petitioner claims that the Board violated his right to equal protection by setting release dates for other similarly-situated prisoners while denying him a release date.

---

[3] The Court sua sponte has combined Claims 5 and 8.

1  Petitioner states that between 1977 and 1979, the Board granted parole to prisoners
2  sentenced to life terms, including those who were convicted of first degree murder with
3  multiple victims, extensive juvenile records, and adult criminal records.  Petitioner points
4  out that although he was convicted of first degree murder, there was only one victim, and
5  that Petitioner had a minimal criminal juvenile record and no adult record.

6  The Equal Protection Clause of the Fourteenth Amendment commands that no
7  State shall "deny to any person within its jurisdiction the equal protection of the laws."
8  City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985).  However,
9  because prisoners are not a suspect class, Glauner v. Miller, 184 F.3d 1053, 1054 (9th Cir.
10 1999), even if Petitioner was treated differently than other similarly-situated prisoners in
11 California, such disparate treatment may be justified by showing a rational basis for the
12 disparity.  City of Cleburne, 473 U.S. at 440.

13 Contrary to Petitioner's assertions, California law does not require the Board to
14 conduct a comparative analysis of the period of confinement served by other prisoners
15 convicted of similar crimes.  See In re Dannenberg, 34 Cal. 4th 1061, 1083-84 (2005)
16 (holding whether an inmate poses a current danger is not dependent upon whether his
17 commitment offense was more or less egregious than other, similar crimes).  Instead, the
18 Board is required to review the specific facts of each case and to make an individualized
19 determination as to whether a prisoner is suitable for parole.  See In re Lawrence, 44 Cal.
20 4th 1181, 1221 (2008).  Without more, Petitioner's allegations fail to establish an equal
21 protection violation.

22  As a matter of law, all inmates applying for parole are not similarly situated.  See,
23 e.g., Bennett v. People of the State of Cal., 406 F.2d 36, 38-39 (9th Cir. 1969) (denying
24 inmate's equal protection claim that other inmates were released  from prison before him,
25 and noting "[t]he Constitution does not make it legally impossible for a state, in granting
26 or refusing parole, to make an individualized judgment in each case"); Sweazea v.
27 Missouri Bd. of Probation & Parole, 742 F.2d 482, 483 (8th Cir. 1984) (per curiam)
28 (denying inmate's equal protection claim based on allegation that "other inmates who had

committed crimes arguably worse than his . . . were assigned parole dates earlier than his" because inmate "was not similarly situated with those against whom he was comparing himself").

Accordingly, the state court's rejection of Petitioner's claim of equal protection was neither contrary to nor an unreasonable application of federal law, and Petitioner is not entitled to federal habeas relief on that claim.

### 2.  Due Process

Petitioner next claims that his due process rights were violated at his 2004 and 2005 parole suitability hearings because the Board relied on inaccurate and incomplete information contained in his central file and Board records, which prejudiced his ability to receive a fair hearing. Petitioner also claims that the Board failed to apply the relevant criteria set forth in state regulations.

"California's parole scheme gives rise to a cognizable liberty interest in release on parole." McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002). If a state statute "uses mandatory language ('shall') to 'create a presumption that parole release will be granted' when the designated findings are made," the statute creates a liberty interest in parole. Bd. of Pardons v. Allen, 482 U.S. 369, 377-78 (1987) (quoting Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1, 12 (1979)). California's statutory scheme creates a presumption that parole release will be granted unless the statutorily defined determinations are made. McQuillion, 306 F.3d at 902. Because California prisoners have a constitutionally protected liberty interest in release on parole, they cannot be denied a parole date (i.e., the parole board cannot decline to grant a parole date and cannot rescind an already-granted parole date) without adequate procedural protections necessary to satisfy due process. See Irons v. Carey, 505 F.3d 846, 850 (9th Cir. 2007), overruled on other grounds by Hayward v. Marshall, 603 F.3d 546 (9th Cir. 2010) (en banc).

The United States Supreme Court has held that due process is satisfied in the context of a hearing to set a parole date where a prisoner is afforded notice of the hearing,

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\SJ.JF\HC.06\Redd1691denhc.wpd

5

an opportunity to be heard and, if parole is denied, a statement of the reasons for the denial. Hayward, 603 F.3d at 560 (citing Greenholtz, 442 U.S. at 16). In California, a prisoner is entitled to release on parole unless there is "some evidence" of current dangerousness. Hayward, 603 F.3d at 562; In re Lawrence, 44 Cal. 4th 1181, 1210 (2008). California's "some evidence" requirement was summarized in Hayward as follows:

> As a matter of California law, 'the paramount consideration for both the Board and the Governor under the governing statutes is whether the inmate currently poses a threat to public safety.' There must be 'some evidence' of such a threat, and an aggravated offense 'does not, in every case, provide evidence that the inmate is a current threat to public safety.' The prisoner's aggravated offense does not establish current dangerousness 'unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state' supports the inference of dangerousness. Thus, in California, the offense of conviction may be considered, but the consideration must address the determining factor, 'a current threat to public safety.'

Hayward, 603 F.3d at 562 (quoting Lawrence, 44 Cal.4th. at 1191, 1210-14).

Petitioner's claim that the Board relied upon inaccurate and incomplete information in his prison records to deny him parole is not cognizable. Because California has created regulations from which a protected interest in accurate personal information records could arise, the regulations create a constitutionally protected liberty interest if they contain "'explicitly mandatory language,' i.e., specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow." Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 463 (1989) (quoting Hewitt v. Helms, 459 U.S. 460, 472 (1983)).

California Code of Regulations title 15, section 3450 allows inmates to inspect personal records and to request correction of outdated, inaccurate or incomplete information. If a request to correct information is denied, the inmate may have a statement of disagreement placed in the record or file. See 15 Cal. Code Regs. § 3450(c). These regulations do not contain substantive predicates or mandatory language requiring a specific outcome when a determination on a request to amend personal information in a prisoner's file is made. The regulations list no criteria that must be met before an

inmate's request will be granted or denied.  A provision that merely provides procedural requirements, even if mandatory, cannot provide the basis for a constitutionally protected liberty interest.  See Thompson, 490 U.S. 454, 461-62 (1989); Smith v. Noonan, 992 F.2d 987, 989 (9th Cir. 1993).  Thus, Petitioner does not have a constitutionally protected liberty interest in maintaining accurate information in his records.  Petitioner does not cite any federal law to support his claim that he has a constitutional right to an error-free prison central file.  Although he makes reference to due process, a bare citation to the Constitution does not convert his state law claims into federal questions.  Little v. Crawford, 449 F.3d 1075, 1083 n.6 (9th Cir. 2006).

Alternatively, Petitioner cannot demonstrate that the inaccurate or incorrect information contained in his prison files had a substantial or injurious effect on the outcome.  See Penry v. Johnson, 532 U.S. 782, 795-96 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)).  Petitioner's claim largely disputes evidence relied upon by the Board in parole suitability hearings that occurred as early as 1981.  The only challenge relevant to the 2005 hearing is Petitioner's allegation that the 2005 Board was provided with and relied upon copies of outdated lists of disciplinary reports (CDC-115s) even after Petitioner had succeeded in expunging more than fifteen incidents, and that the Board misstated facts about Petitioner's parole plans.  However, a review of the transcript reveals that at the 2005 hearing, the Board confirmed that fourteen of the CDC-115s that Petitioner had expunged were not included in the packet of materials the Board was considering.  (2005 Tr. at 39.)  In addition, in reciting its decision denying parole, the Board acknowledged that Petitioner had good parole plans and had both job offers and offers of a residence.  (Id. at 60.)  Thus, even assuming that Petitioner's prison files still contained inaccurate information, Petitioner has not shown that this information had an injurious effect on the outcome of his 2005 parole suitability hearing.

To the extent that Petitioner argues the Board's denial of parole in 2004 was not supported by "some evidence," that claim is moot in light of Petitioner's subsequent hearing in 2005.  Cf. Haggard v. Curry, No. 10-16819, 2010 WL 4015006, *5 (9th Cir.

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\SJ.JF\HC.06\Redd1691denhc.wpd

7

Oct. 12, 2010) (per curiam) (order) ("where the Board's parole denial decision is not based on "some evidence" of current dangerousness, the California-created, but federally enforceable, liberty interest in parole gives the prisoner only the right to a redetermination by the Board consistent with the state's "some evidence" requirement, not the right to release on parole.").

To the extent that Petitioner claims that the Board's denial of parole in 2005 was not based on "some evidence," his claim is without merit. At the hearing, the Board incorporated by reference the summary of the commitment offense from the 2004 parole suitability hearing. (2005 Tr. at 12.)

> Paul Redd, referred to as the prisoner, and codefendant Sherman Harris and Kevin Davis, and Victim Chalres Howard Goins, were involved in drug transactions. The victim complained about the quality of the drugs and demanded repayment of 200 dollars, which he had previously paid. As a result, on the evening of 11/18 of '75, the victim was lured to a remote section of San Francisco, and according to an eyewitness, Kelvin Davis, the victim begged for his life before the prisoner shot him execution style in the head, chest, and arm at point-blank range. The body was discovered near some railroad tracks on Illinois Street in San Francisco, California.

(Resp. Ex. 11 (2004 Tr.) at 12-13.) Although the Board acknowledged that Petitioner consistently has denied being involved with the murder (2005 Tr. at 8), it denied parole based on the circumstances of the commitment offense as well as other factors supported by the record. The Board found that Petitioner had a unstable social history because he had been placed on juvenile probation, had dropped out of high school, had no significant employment history, and previously had been involved in drug sales. (Id. at 59, 61.) The Board also noted that Petitioner was validated as an active member of a gang as recently as July 2003, was programmed in a limited manner during his lengthy incarceration period, and had spent a great deal of time in the SHU. (Id. at 59, 60.) The Board pointed out that Petitioner had sixteen counseling chronos, the last dated in 2000, for over-familiarity with staff, and nineteen serious violation reports. (Id. at 59-60.) In addition, Petitioner's 2003 psychological report was not totally supportive of release and indicated a need for a longer period of observation and evaluation. (Id. at 62.) The Board concluded that, in light of his history and lack of programming, "there is no indication

that [Petitioner] would behave differently if paroled." (Id. at 61.) Although Petitioner has been incarcerated beyond his minimum term, a review of the record demonstrates that the Board's conclusion that Petitioner would pose an unreasonable danger to society if released was supported by sufficient evidence.

### 3. Separation of Powers

Petitioner claims that the power delegated to the Board violates the constitutional doctrine of separation of powers. The federal doctrine of separation of powers does not extend to the states under the Fourteenth Amendment. See Hughes v. Superior Court, 339 U.S. 460, 467 (1950). To the extent Petitioner is arguing that the Board violated the doctrine of separation of powers contained in the California state constitution, this argument does not give rise to a claim for federal habeas relief. See Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985).

### 4. Failure to Correct Sentence

Petitioner claims that in 1976, after he was sentenced, the Board (then known as the Adult Authority) erroneously imposed an unauthorized consecutive determinate sentence of five to ten years based on sentencing enhancements under California Penal Code §§ 12022 and 12022.5. Petitioner claims that this sentence was illegal in light of People v. Walker, 18 Cal. 3d 232 (1976) (concluding that no sentence can be consecutive to a life sentence). This claim is not cognizable because federal habeas relief is unavailable for violations of state law or for alleged error in the interpretation or application of state law. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

### 5. Retaliation / Bias

Petitioner next alleges that the Board retaliated against him for exercising his First Amendment right to petition the government for redress by denying him parole for three years instead of one. He points specifically to Commissioner Robert Harmon's comment during his 2005 hearing, that Petitioner should spend less time filing complaints and more time involved in self-help and programming, as evidence of retaliatory motive. Petitioner also claims that Commissioner Susan Fisher, who presided over Petitioner's 2005

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\SJ.JF\HC.06\Redd1691denhc.wpd

9

hearing, failed to disclose that her brother had been murdered and that she belonged to several victims' rights organizations. Petitioner alleges that had he known these facts, he would have requested that Fisher disqualify herself.

Although California inmates do have a due process right to parole consideration by neutral, impartial decision-makers, Petitioner's claims of bias and retaliation are conclusory and are not supported by the record. See O'Bremski v. Maas, 915 F.2d 418, 422 (9th Cir. 1990) (an inmate is "entitled to have his release date considered by a Board that [is] free from bias or prejudice"); see also Jones v. Gomez, 66 F.3d 199, 204-05 (9th Cir. 1995) ("[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief."). The record contains no evidence that the Board, Commissioner Harmon or Commissioner Fisher was motivated by bias or a desire to retaliate against Petitioner. To the contrary, as discussed above, the Board's decision to deny parole was supported by substantial evidence that Petitioner posed a continued danger to society. Accordingly, the state courts' denial of this claim was not contrary to or an unreasonable application of federal law.

### 6. First Amendment

Petitioner claims that the Board's requirement that he participate in Alcoholics Anonymous and Narcotics Anonymous violated his rights under the First Amendment. "[A]t minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion, or its exercise . . . ." Lee v. Weisman, 505 U.S. 577, 587 (1992). The "coercion test" for a First Amendment violation looks to: (1) whether there was state action; (2) whether the state action amounted to coercion; and (3) whether the object of the coercion was religious or secular. See Inouye v. Kemna, 504 F.3d 705, 713 (9th Cir. 2007) (applying "coercion test" to parolee's § 1983 action challenging a requirement that he attend a faith-based treatment program as a condition for remaining on parole). In its decision denying parole, the Board stated, "[The psychological evaluation] say[s] that if parole is considered that it would be prudent to require involvement in AA and NA. And that's significant in that Mr. Redd hasn't been

participating in a substance abuse program while he has been incarcerated." (2005 Tr. at 60). The Board's reference to NA and AA thus was a comment on the findings of the psychological evaluation report rather than a requirement that Petitioner participate in any specific program. In addition, the Board's suggestion that Petitioner participate in some type of substance abuse program cannot reasonably be read as a requirement that Petitioner join AA and NA as a condition for receiving parole.

### 7. Psychological Evaluation

Initially, the Court understood Petitioner to be claiming that his due process rights were violated because he was entitled to receive a new psychological evaluation prior to his 2005 hearing. However, Petitioner claims in his traverse that the 2003 evaluation relied upon by the Board contained "highly prejudicial" and erroneous information. He point out that during his 2004 hearing, he objected to several factual details in the report regarding his pre-incarceration history. These details included: (1) the dates of Petitioner's membership in the Cub Scouts and Boy Scouts; (2) the dates of Petitioner's enrollment in the ROTC and withdrawal from the 10th grade; (3) the date on which Petitioner's mother died; and (4) the locations where Petitioner attended junior and high school. Petitioner asserts that rather than ordering a new report so that those errors could be corrected, the Board incorrectly continued to rely on the 2003 report.

Petitioner has no constitutionally protected liberty interest in receiving an "accurate" psychological report. See Thompson, 490 U.S. 454, 461-62 (1989). In addition, even assuming that there were such an interest, there is no indication that the Board relied on any of these asserted factual discrepancies in denying parole. As noted above, the Board relied specifically on Petitioner's recent gang validation, his lack of programming, and his accumulation of disciplinary and counseling chronos.

### C. Certificate of Appealability

The federal rules governing habeas cases brought by state prisoners require a district court that denies a habeas petition to grant or deny a certificate of appealability (COA) in its ruling. See Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009). In light of the foregoing discussion, the Court

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\SJ.JF\HC.06\Redd1691denhc.wpd

11

concludes that Petitioner has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right [or] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Accordingly, the Court declines to issue a COA.

## CONCLUSION

The Court concludes that Petitioner has failed to show any violation of his federal constitutional rights in the underlying state proceedings. Accordingly, the petition for writ of habeas corpus and COA are DENIED.

The Clerk shall terminate all pending motions, enter judgment and close the file.

IT IS SO ORDERED.

DATED: 11/16/10

JEREMY FOGEL
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA


PAUL A. REDD, Jr.,

        Petitioner,

v.

ROBERT HOREL, Warden,

        Respondent.
                                   /

Case Number: CV 06-01691 JF

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on 11/17/10, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.


Paul A. Redd B-72683
PBSP-II
P O Box 7500
D2-117
Crescent City, CA 95532

Dated: 11/17/10

                                        Richard W. Wieking, Clerk
                                        By: Deputy Clerk

Paul A. Redd B-72683
PBSP-II
P O Box 7500
D2-117
Crescent City, CA 95532


CV06-01691 JF